UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| BRIAN CORNICK, | ) | |
| | ) | C/A No.: 4:15-cv-3442-PMD-TER |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| CAROLYN W. COLVIN, ACTING | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

## I.  RELEVANT BACKGROUND

### A.    Procedural History

On June 7, 2013, the Plaintiff filed an application for DIB and SSI alleging disability since August 18, 2012. The claim was denied initially and upon reconsideration. (Tr. 97-104, 109-12). A hearing was held by an Administrative Law Judge ("ALJ") on March 27, 2015. (Tr. 22-48). The ALJ found in a decision dated April 15, 2015, that Plaintiff was not disabled.(Tr. 11-21).  On July 31, 2015, the Appeals Council denied Plaintiff's request for

review making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  (Tr. 1-4). Plaintiff filed this action on August 27, 2015, in the United States District Court for the District of South Carolina.

**B.     Plaintiff's Background and Medical History**

**1.     Introductory Facts**

Plaintiff was born on August 16, 1962, and was 50 years old on the alleged disability onset date. (Tr. 21). Plaintiff has at least a high school education and past relevant work experience as a tool room attendant, an auto salesperson and repairer, a heavy wheel/equipment mechanic, and a quality control inspector. Plaintiff alleges disability primarily due to his degenerative disc disease.

**2.     The ALJ's Decision**

In the decision of April 25, 2015, the ALJ found  the following:

1.     The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

2.     The claimant has not engaged in substantial gainful activity since August 18, 2012, the alleged onset date. (20 CFR 404.1571, *et seq*., and 416.971 *et seq*.).

3.     The claimant has the following severe impairments: degenerative disc disease (DDD), osteoarthritis of the left hip, and degenerative changes of the right shoulder. (20 CFR 404.1520(c) and 416.920(c)).

4.     The claimant does not have an impairment or combination of impairments that meets or  medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925

2

and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except that he can frequently balance, occasionally climb ramps or stairs, stoop, kneel, crouch, and crawl, but never climb ladders, ropes or scaffolds. He can occasionally reach overhead and frequently reach out bilaterally. He needs a sit/stand option at his workstation every 60 minutes and can never drive.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on August 16, 1962, and was 50 years old, which is defined as an individual approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2)

10. Considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 18, 2012, through the date of this decision (20 CFR 404.1520(g)

and 416.920(g)).

(Tr. 13-21).

## II. DISCUSSION

The Plaintiff argues that the ALJ erred in her decision, and requests that the decision

of the Defendant be reversed and remanded for further proceedings. (Pl. Br. at 12).

Specifically, Plaintiff raises the following arguments in his brief, quoted verbatim:

I.      THE ALJ'S DECISION IS NOT SUPPORTED BY SUBSTANTIAL
        EVIDENCE

II.     THE ALJ PERFORMED A FLAWED CREDIBILITY ANALYSIS.

(Plaintiff's brief).

The Commissioner argues that the ALJ's decision was based on substantial evidence

and that it should therefore be affirmed.

## A.        LEGAL FRAMEWORK

### 1.        The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured

for benefits, who are not of retirement age, who properly apply, and who are under a

"disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to

engage in any substantial gainful activity by reason of any medically determinable physical

or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations

promulgated under the Act have reduced the statutory definition of disability to a series of

five sequential questions. See, e.g., Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952,

76 L.Ed.2d 66 (1983) (discussing considerations and noting "need for efficiency" in

considering disability claims). An examiner must consider the following: (1) whether the

claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe

impairment; (3) whether that impairment meets or equals an impairment included in the

Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5)

whether the impairment prevents him from doing SGA. See 20 C.F.R. § 404.1520. These

considerations are sometimes referred to as the "five steps" of the Commissioner's disability

analysis. If a decision regarding disability may be made at any step, no further inquiry is

necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant

disabled or not disabled at a step, Commissioner makes determination and does not go on to

---

[1]The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; Sullivan v. Zebley, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990); see Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2]In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d) (5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir.2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. Hall v. Harris, 658 F.2d 260, 264–65 (4th Cir.1981); see generally Bowen v. Yuckert, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) (regarding burdens of proof).

### 2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner

applied the proper legal standard in evaluating the claimant's case. See id.; Richardson v.

Perales, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); Walls, 296 F.3d at 290

(citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the

evidence." Vitek v. Finch, 438 F.2d 1157, 1157–58 (4th Cir.1971); see Pyles v. Bowen, 849

F.2d 846, 848 (4th Cir.1988) (citing Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir.1986)).

Rather, the court must uphold the Commissioner's decision if it is supported by substantial

evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." Richardson, 402 U.S. at 390, 401; Johnson v.

Barnhart, 434 F.3d 650, 653 (4th Cir.2005). Thus, the court must carefully scrutinize the

entire record to assure there is a sound foundation for the Commissioner's findings and that

her conclusion is rational. See Vitek, 438 F.2d at 1157–58; see also Thomas v. Celebrezze,

331 F.2d 541, 543 (4th Cir.1964). If there is substantial evidence to support the decision of

the Commissioner, that decision must be affirmed "even should the court disagree with such

decision." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir.1972).

**B.    ANALYSIS**

Plaintiff first argues that the ALJ's decision is not based on substantial evidence

because she did not make an affirmative finding that his physical condition failed to satisfy

the requirements of Listing 1.04. Specifically, Plaintiff argues that because the ALJ stated

that "the weight of the evidence of record fails to *indicate* the claimant suffers from

degenerative disc disease" (emphasis added), the ALJ had unresolved questions about

Plaintiff's medical condition not sufficiently answered by the evidence in the existing medical record. Therefore, Plaintiff argues the ALJ should have requested additional evidence or required additional medical testing.

Step two of the sequential evaluation requires the ALJ to "consider the medical severity of [a claimant's] impairment(s)." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The claimant bears the burden at this step to show that he has a severe impairment. See Bowen v. Yuckert, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" means "the abilities and aptitudes necessary to do most jobs." Examples of these include:

(1)    Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2)    Capacities for seeing, hearing, and speaking;
(3)    Understanding, carrying out, and remembering simple instructions;
(4)    Use of judgment;
(5)    Responding appropriately to supervision, co-workers and usual work situations; and
(6)    Dealing with changes in a routine work setting.

20 C.F.R. §§ 404.1521(b), 416.921(b). "[A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir.1984) (emphasis in original) (internal quotation marks omitted); 20 C.F.R. § 404.1521.

At step two of the sequential evaluation process, the ALJ found degenerative disc

disease to be a severe impairment (Tr. 13). *See* 20 C.F.R. § 404.1520(a)(4)(ii).  As noted

above, for an alleged impairment to be found severe, Plaintiff must show that it is more than

merely a "slight abnormality or a combination of slight abnormalities which would have no

more than a minimal effect on an individual's ability to work." *Social Security Ruling,* 85-28,

1985 WL 56856, at *3. The focus of the analysis must be on the limitations caused by the

impairment, not the mere existence of an impairment.

Regarding whether Plaintiff's degenerative disc disease met listing 1.04, the Court

concludes that the ALJ's finding is supported by substantial evidence. Listing 1.04 of the

Agency's listing of impairments relates to spinal disorders. In its entirety, Listing 1.04 states:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B.  Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C.  Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate

effectively, as defined in 1.00B2b.

20 C.F.R. § 404 Subpt. P, App'x 1.

Plaintiff's most recent MRI on September 5, 2013, of the lumbar spine revealed that T12-L1 and L1-L2 had no significant neuroforaminal narrowing or spinal canal stenosis; L2-L3 had minimal diffuse disc bulge without significant neuroforaminal narrowing or spinal canal stenosis; L3-L4 had diffuse disc bulge touching but not compressing the transiting nerve roots and also touching the exiting right-siding nerve root; L4-L5 had diffuse disc bulge touching but not compressing the transiting nerve roots; and, the L5-S1 had posterior disc osteophyte complex touching and minimally compressing the right-sided transiting nerve root. (Tr. 332). Additionally, Plaintiff began seeing Dr. Glaser at MUSC in August 2013, who reviewed the MRI results and reported that it revealed a "broad-based rather small disc herniation on the right at L5-S1 and some degeneration with mild bulging at L3-4 and L4-5 with no neurologic compression." (Tr. 362). The ALJ's finding is also supported by the treatment notes from Dr. Glaser of October 2, 2013, January 3, 2014, and April 25, 2014, which indicate that Plaintiff stated he had improved moderately with physical therapy and was "happy with the way things were going", his sciatica was pretty much resolved, he wanted to hold off on injections, exercise was helping the condition which he was able to continue, and he found Plaintiff to be at maximum medical improvement on April 25, 2014, with a 0% impairment rating to his lumbar spine. (Tr. 362-63). Dr. Glaser noted the following regarding any work restrictions, "[w]e discussed this and he thinks a 50 pound lifting limit would be reasonable. He also feels it would be worthwhile to avoid repetitive

10

lifting and carrying." (Tr. 363). Similarly, the physical therapy treatment notes of September 2013, state Plaintiff had made good progress with improvements in strength, endurance, balance and function ability but continues to have a "negative perception of his functional abilities. Pt. also continues to demonstrate non-organic signs/symptoms and improved performance with distraction. Pt. will continue to benefit from PT to address remaining deficits in order to achieve highest level of function." (Tr. 345).

As Plaintiff fails to show, and the record does not contain evidence to meet the criteria of Listing 1.04, the ALJ's finding is supported by substantial evidence.[3]

**Credibility**

Plaintiff also argues that the ALJ performed a flawed credibility analysis. The ALJ considered and evaluated Plaintiff's subjective complaints, but did not find them to be fully credible. The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir.1985).

It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for

---

[3] The record contained sufficient evidence for the ALJ to make a Listing 1.04 determination without ordering additional testing or expert testimony to develop the record.

11

evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision. SSR 96–7p.

Under Craig v. Chater, 76 F.3d 585, 591–96 (4th Cir.1996), subjective complaints are evaluated in two steps. First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Not until such underlying impairment is deemed established does the fact finder proceed to the second step: consideration of the entire record, including objective and subjective evidence, to assess the credibility of the severity of the subjective complaints. See also 20 C.F.R. § 404.1529(b); Social Security Ruling (SSR) 96–7p.

The ALJ may choose to reject a claimant's testimony regarding his pain or physical condition, but he must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. Hatcher v. Sec'y, Dep't of Health & Human Servs., 898 F.2d 21, 23 (4th Cir.1989) ( quoting Smith v. Schweiker, 719 F.2d 723, 725 n. 2 (4th Cir.1984)). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the

12

adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p.

Here, the ALJ accepted that Plaintiff had medically determinable impairments that could reasonably be expected to cause the alleged symptoms, but cited both objective and subjective evidence detracting from Plaintiff's statements regarding the extent of his limitations. (Tr. 16-19).  The ALJ thoroughly discussed the objective medical evidence as follows, quoted verbatim, in part:

> The medical evidence shows that the claimant injured his back in a work related injury on March 21, 2012. He was working in Kuwait at the time. An MRI of the claimant's spine dated August 22, 2012, demonstrated lumbar spondylodegenerative changes, a L3-4 right posterolateral and foraminal disc protrusion, and L4-5 and L5-S1 diffuse posterior disc bulge. Osteoarthritic changes of his left hip were noted. Mild supraspinatus and subscapularis tendinopathy was noted in his right shoulder. The claimant participated in physical therapy sessions. He was prescribed nonsteroidal anti-inflammatory (NSAODS) medication. (Exhibit 1F).
>
> On April 11, 2012, Dr. Eman Fekry advised the claimant to perform a low level of physical work (physical effort), organize his duties, especially sitting, driving and/or standing too long, in addition to following his medical treatments and physiotherapy. He noted that the claimant reported a 60% reduction in his symptoms after 8 sessions of physical therapy. Ten more physical therapy sessions were ordered due to some difficulty and numbness with prolonged effort. (Exhibit 1F).
>
> On December 30, 2012, Dr. Fekry advised that the claimant perform a low level of physical work (physical effort), organize his duties, especially sitting, driving and/or standing too long, follow his medical treatments and physiotherapy, and not fly for at least 2 months until his condition became controlled and he was able to sit and not have pain with regular effort. Dr. Fekry ordered additional physiotherapy sessions (Exhibit 1F).

An MRI of the claimant's cervical spine from January [2]013 demonstrated a C6-7 diffuse posterior disc bulge, obliterating the anterior cerebrospinal fluid space and mildly indenting the anterior aspect of his spinal cord. Maximum medical improvement (MMI) was predicted to occur January 1, 2013, absent complications. In February 2013, although Dr. Fekry indicated in a medical form that the claimant could not return to work at that time, he completed another form indicating that the claimant could constantly lift and carry up to 20 pounds, frequently lift and carry up to 50 pounds, and occasionally lift and carry up to 100 pounds. He noted that the claimant could occasionally push/pull 20 pounds, as well as occasionally climb stairs, kneel, crouch and crawl. He could frequently operate foot controls, balance, and stoop. That same month, Dr. Youseef Koleilat, a consultant orthopedic surgeon, stated in a form that the claimant's lower back pain and left sciatica continued to disable him and prevent him from returning to work. He noted that the claimant had improved only by 50% with conservative treatment and his MMI was extended for another 2 months.

. . .

The undersigned gives considerable weight, however, to the nonexertional limitations assessed by Dr. Fekry in February 2013, approximately 6 months after the claimant's alleged onset date, as his treatment notes indicate that the claimant had experienced some improvement with conservative treatment. However, with regard to the claimant's exertional limitations, the undersigned does not give weight to Dr. Fekry's opinions that the claimant could lift and carry as much as 100 pounds as the residual functional capacity to light work generally is most consistent with the 20 pound pushing/pulling limitations assessed by Dr. Fekry. Also, the limitation to light work avoids heavy lifting and carrying, which Dr. Fekry instructed the claimant to avoid early on in his treatment.

(Tr. 16-17).

The ALJ went on to discuss the treatment records from Dr. Glaser at the Medical University of South Carolina and the results of the MRI in September 2013 which are

addressed in the previous argument. The ALJ  gave great weight to the limitations assessed

by Dr. Fekry but assigned greater limitations regarding lifting and carrying than that opined

by Dr. Ferky. The ALJ also added a sit/stand option and a limitation on driving to account

for Dr. Fekry's limitations and to avoid the aggravation associated with prolonged positions.

As to the opinions of the State Agency medical consultants with regard to limiting the

claimant to work at the light exertional level, the ALJ gave great weight. However, the ALJ

assigned greater restrictions by restricting Plaintiff's bilateral reaching overhead/out finding

it could aggravate his neck and back pain.

> With regard to Plaintiff's credibility, the ALJ concluded:

> > The claimant's activities of daily living are inconsistent with his
> > allegations of such significant functional imitations but are
> > consistent with the residual functional capacity described above.
> > The evidence of record indicates that despite the claimant's
> > complaints and allegations he has admitted that he was able to
> > bathe and dress himself, feed his dog, drive, pick his grandson
> > up from the bus stop, take his medications independently, shop
> > with his wife, go outside every day, read, help his grandson with
> > his homework, watch television, use his computer, perform his
> > recommended exercises, and attend church, activities which
> > generally reveal functioning at a greater level than alleged.

(Tr. 18).

In light of the above, the undersigned concludes that the ALJ considered both

objective and subjective evidence in making his credibility determination.  Additionally, the

ALJ's consideration indicates that she adequately considered how Plaintiff's impairments

affected his routine. Courts have found that evidence of similar levels of activity tends to

weigh against a finding of disability. See Johnson, 434 F.3d at 658 (ALJ properly found

15

claimant's description of "excruciating" pain inconsistent with her testimony that she cooked, cleaned the house, read, watched television, visited relatives, and attended church twice weekly); accord Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994); Gross, 785 F.2d at 1166.  Because the record contains substantial evidence supporting the ALJ's conclusion about Plaintiff's limitations, the ALJ's credibility determinations are entitled to deference.

### III.  CONCLUSION

This court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. Richardson, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. Blalock,483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this court cannot reverse that decision merely because the evidence would permit a different conclusion.  Shively v. Heckler, 739 F.2d at 989. As previously discussed, despite the Plaintiff's claims, he has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, and pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631 (c) (3) of the Social Security Act, 42 U.S.C. Sections 405 (g) and 1338 (c) (3), it is, **RECOMMENDED** that the Commissioner's decision be **AFFIRMED**.

Respectfully submitted,


s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

November 7, 2016
Florence, South Carolina